UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| STEPHEN E. WHITTED, | CASE NO. C18-0642-JCC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| PETER JORDAN, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants Peter and Lori Jordan's (individually "Mr. Jordan" and "Ms. Jordan," collectively "the Jordans") motion for summary judgment (Dkt. No. 28) and motion for sanctions (Dkt. No. 38), Defendants Stacey Smythe, Molly B. Kenny, and the Law Offices of Molly B. Kenny's (individually "Ms. Smythe" and "Ms. Kenny," collectively the "MBK Defendants") motion for summary judgment (Dkt. No. 40), Plaintiff Stephen Whitted's ("Mr. Whitted") motions to defer or deny Defendants' motions for summary judgment (Dkt. Nos. 44, 57) and motion for leave to file an amended complaint (Dkt. No. 49), and Mr. Whitted and the Jordan's joint submissions pursuant to W.D. Wash. Local Civil Rule 37 (Dkt. Nos. 47, 85). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby issues the following order.

## I.    BACKGROUND

This lawsuit arises out of Mr. Whitted and Ms. Jordan's divorce and subsequent legal

proceedings in both Georgia and Washington related to the custody and support of their three

children. (*See generally* Dkt. Nos. 1, 29, 29-1.)

After 22 years of marriage, Ms. Jordan filed for divorce in Georgia. (Dkt. No. 29 at 1–2.)

On November 13, 2007, the Fulton County Superior Court entered a final judgment and decree

of divorce (the "divorce decree"). (*Id*. at 2; Dkt. No. 29-1 at 4–13.)[1] Mr. Whitted and Ms. Jordan

were awarded joint legal and joint physical custody of their three children, who were minors at

the time of the divorce. (Dkt. No. 29-1 at 5.) Under the divorce decree, Ms. Jordan received

primary physical custody, and Mr. Whitted was ordered to pay child support in the amount of

$1,735.93 per month. (*Id*. at 5, 10.) In July 2008, the Fulton County Superior Court found Mr.

Whitted in contempt for failure to pay child support and placed a lien on his wages. (*Id*. at 17–

19.)

In February 2010, the Jordans married. (Dkt. No. 29 at 3.) Later that year, Ms. Jordan

petitioned the Fulton County Superior Court for a modification of the custody order established

in the divorce decree. (*Id*.) Ms. Jordan sought, among other things, sole legal custody of the

minor children and permission to move her family from Georgia to North Carolina. (*Id*.) Mr.

Whitted responded by filing a separate lawsuit in Fulton County Superior Court against Ms.

Jordan, her attorney in the modification action, and "John Doe." (Dkt. No. 29-1 at 46–69.) In that

lawsuit, Mr. Whitted alleged, among other things, that Ms. Jordan's attorneys had engaged in

"abusive litigation," and that "John Doe" had interfered with Mr. Whitted's parental relationship

with his three children. (*Id*. at 61–66.) Mr. Whitted's claims were eventually dismissed. (Dkt.

No. 29 at 4.)

On January 14, 2011, following a trial, the Fulton County Superior Court modified the

---

[1] The Court takes judicial notice of the divorce decree. (Dkt. No. 29-1 at 4–13); *see Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that documents filed in state and federal court are subject to judicial notice). Additionally, the Court takes judicial notice of all the other court records filed in various state and federal actions referenced in this order, and filed by the Jordans and the MBK Defendants with their motions for summary judgment. (*See generally* Dkt. Nos. 29-1, 43.)

divorce decree to grant Ms. Jordan sole legal and physical custody of the children and approved their move to North Carolina. (Dkt. No. 29-1 at 72–77.) On September 20, 2011, Mr. Whitted filed a lawsuit in the U.S. District Court for the Northern District of Georgia, seeking monetary and injunctive relief against a Fulton County Superior Court judge and Mr. Jordan. (Dkt. Nos. 30 at 4, 30-1 at 2–25.) Against Mr. Jordan, Mr. Whitted alleged claims of false imprisonment, loss of consortium, intentional infliction of emotional distress, "intentional interference with parent child custodial relationship/abduction," and civil conspiracy. (Dkt. No. 30-1 at 17–21.) Mr. Whitted alleged that Mr. Jordan conspired with Ms. Jordan to relocate the children from Georgia to North Carolina, which allegedly harmed Mr. Whitted's parent-child relationship. (*Id.* at 12–13.) In April 2012, the district court dismissed all of Mr. Whitted's claims without prejudice. (*Id.* at 57–58.)

In July 2012, Ms. Jordan informed Mr. Whitted that she and Mr. Jordan were moving to Washington with the children. (Dkt. No. 29 at 5.) After re-locating to Washington, each of Ms. Jordan's children legally changed their surnames from Whitted to Jordan. (Dkt. No. 29 at 6–7.) The two older children changed their names after they turned 18, while the youngest child changed his name when he was 16. (*Id.*) As a minor, Ms. Whitted had to join her youngest son in filing a petition for change of name with the King County District Court, which was granted in August 2014. (*Id.* at 7.)

The last child support payment that Ms. Jordan received from Mr. Whitted was in October 2010. (*Id.*) In June 2016, Ms. Jordan filed a petition for modification of the child support order in King County Superior Court (the "King County action"), seeking to hold Mr. Whitted in contempt for failing to pay child support. (*Id.*) Ms. Jordan sought unpaid child support payments, unpaid health insurance premiums, attorney fees, and an offsetting judgment that would reduce the amount of retirement assets Ms. Jordan was required to pay Mr. Whitted under the divorce decree. (*Id.* at 121–128.) Ms. Jordan hired Defendant Law Offices of Molly B. Kenny and was represented by Ms. Smythe. (Dkt. No. 29 at 7; Dkt. No. 43 at 1.) Prior to filing the lawsuit, Ms.

Smythe registered the divorce decree in Washington pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Revised Code of Washington § 26.27. (Dkt. No. 43 at 2.)

At a contempt hearing in August 2016, a King County Superior Court Commissioner held that the court lacked subject matter jurisdiction over Ms. Jordan's petition because Ms. Jordan had incorrectly registered the divorce decree under UCCJEA, rather than the Uniform Interstate Family Support Act ("UIFSA"), Revised Code of Washington § 26.21A.[2] (Dkt. Nos. 29 at 8, 57-3 at 2–7.) On Ms. Jordan's motion for revision, a King County Superior Court judge overturned the Commissioner's ruling and found that Ms. Jordan had substantially complied with UIFSA's registration provisions. (Dkt. No. 43-5 at 1–4.)

At a hearing on January 12, 2017, a King County Superior Court judge found Mr. Whitted in contempt for failing to pay child support and provide insurance for the children. (Dkt. No. 29-1 at 130–136.) The superior court entered judgment against Mr. Whitted for $164,868.85 in back child support and awarded Ms. Jordan $18,000 in attorney fees. (*Id*.) The superior court also ordered Mr. Whitted into custody, and deputies placed him in handcuffs and escorted him to the King County Jail. (*Id*. at 134; Dkt. No. 43 at 2.) As Mr. Whitted was being escorted through the courthouse hallway, Ms. Smythe took several photographs of him in handcuffs. (Dkt. No. 43 at 2.) Ms. Smythe shared these photographs with Ms. Jordan and Ms. Kenny. (*Id*. at 3.) Ms. Jordan emailed one of the photographs to a friend of Mr. Whitted's, with the caption "off to jail." (Dkt. No. 29 at 9.)

Mr. Whitted appealed the King County Superior Court's judgment. *See In re: Lori Jordan v. Stephen Whitted*, No. 76168 (Wash. Ct. App. 2016). On February 12, 2018, Division One of the Washington State Court of Appeals affirmed the superior court's judgment. (Dkt. No.

---

[2] UCCJEA governs modifications regarding child custody issues, while UIFSA governs modifications regarding child support payments. *Compare* Wash. Rev. Code § 26.27, *with* Wash. Rev. Code § 26.21A.

43-4.) The Court of Appeals specifically held that Ms. Jordan complied with UIFSA's registration requirements and affirmed all aspects of the superior court's contempt order and judgment. (*Id.*)

On May 2, 2018, Mr. Whitted filed the present lawsuit. (Dkt. No. 1.) Mr. Whitted asserts numerous causes of action against the Jordans and the MBK Defendants, the majority of which arise from litigation of the King County action. (*See generally id.*) The Jordans and MBK Defendants have filed separate motions for summary judgment. (Dkt. Nos. 28, 40.) The Jordans separately move for sanctions pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 38.) Mr. Whitted responded to both motions for summary judgment by asking the Court for a continuance pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. Nos. 44, 57.) Mr. Whitted also seeks leave to amend his complaint. (Dkt. No. 49.) The Jordans and Mr. Whitted have filed two joint submissions seeking rulings regarding discovery. (Dkt. Nos. 47, 85.) The Court resolves each motion below.

## II.     DISCUSSION

### A.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.      Jurisdiction and Applicable Law

The Court has diversity jurisdiction over this action because Mr. Whitted is a citizen of Maryland, Defendants are citizens of Washington, and the amount in controversy exceeds $75,000. *See* Fed. R. Civ. P. 1332; (Dkt. Nos. 1, 21, 24.) "A district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law." *Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir. 1994). Under Washington law, "[w]here there is no conflict between the laws or interests of two states, the presumptive local law is applied." *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1216 (Wash. 1994).

The parties do not assert, and the Court does not find, that there are conflicts between the laws of Washington and any other jurisdictions whose laws might apply to this action, whether it be Maryland (Mr. Whitted's place of residence) or Georgia (the place where some of the allegations underlying Mr. Whitted's claims arose). Thus, the Court will apply Washington law as appropriate, including for the *prima facie* case for each cause of action and the relevant statutes of limitation. The Court also finds that it is not precluded from adjudicating these claims under the domestic relations exception. *See Ankenbrandt v. Richards*, 504 U.S. 689, 692 (1992). Nor does the Court find that it is appropriate to abstain from adjudicating Mr. Whitted's claims. *See id.* at 704–06.

### C.      Mr. Whitted's Motions Pursuant to Rule 56(d)

In response to Defendants' motions for summary judgment (Dkt. Nos. 28, 40), Mr. Whitted asks the Court to grant a continuance pursuant to Federal Rule of Civil Procedure 56(d)

in order to allow him to conduct further discovery. (Dkt. Nos. 44, 57.)[3] A district court may defer ruling on a motion for summary judgment or allow additional time to conduct discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To meet its burden under Rule 56(d), a party seeking to delay summary judgment for further discovery must show that: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Mr. Whitted has not met his burden to demonstrate that a Rule 56(d) continuance is warranted. In his affidavit in support of a continuance to respond to the Jordans' motion for summary judgment, Mr. Whitted asserts that the Jordans provided "dilatory and evasive" responses to his discovery requests. (Dkt. No. 44-3 at 1.) Mr. Whitted states that "[t]he receipt of meaningful factual responses to each of the interrogatories and requests for production of documents served to date is essential to the presentation of the ten claims asserted in the complaint, as well as the defense of defendants' motion for summary judgment now filed in this matter." (*Id*. at 2.) But Mr. Whitted does not state—either in his affidavit or in his motion for a continuance—the specific facts that he hopes to elicit from further discovery. (*See* Dkt. Nos. 44, 44-3.)[4] Instead, Mr. Whitted makes broad and conclusory statements about what he believes to be the Jordans' noncompliance with his discovery requests. (*See id*.) Further, Mr. Whitted does

---

[3] Mr. Whitted filed a separate Rule 56(d) motion in response to the Jordans' motion for summary judgment (Dkt. No. 44), whereas his request for a continuance in regard to the MBK Defendants' motion for summary judgment is contained in his response to that motion. (*See* Dkt. No. 57.)

[4] The closest Mr. Whitted comes to stating specific facts he expects to elicit from further discovery is where he writes that "a deposition should be allowed of defendant Lori Jordan regarding actions taken by her from 2012 to 2016, through present in regard to Plaintiff's minor children that relate to the Plaintiff's claim for loss of consortium." (Dkt. No. 44 at 12.) However, this statement neither sets forth the specific facts Mr. Whitted seeks, nor explains how such facts are essential to oppose the Jordans' motion for summary judgment. Moreover, Mr. Whitted has not alleged a loss of consortium claim against Ms. Jordan. (*See* Dkt. No. 1.)

not explain how the discovery he seeks is essential to opposing the Jordans' motion for summary judgment. Mr. Whitted offers only generalized statements about why he needs additional discovery from the Jordans. (*See, e.g.*, Dkt. No. 44-3 at 1) ("This written discovery was specifically tailored to elicit information, facts, and evidence probative of each of the causes of action asserted in the complaint.").

Mr. Whitted's request for a continuance to respond to the MBK Defendants' motion for summary judgment suffers from the same deficiencies. (*See* Dkt. No. 57.) In his affidavit, Mr. Whitted asserts that the MBK Defendants have provided inadequate discovery responses. (Dkt. No. 57-1 at 1–2.) Mr. Whitted suggests that the information he is seeking is outlined in a letter he sent to opposing counsel; however, that letter merely repeats the same generalized discovery objections Mr. Whitted made in his affidavit seeking a Rule 56(d) continuance. (*Compare* Dkt. No. 57-1, *with* Dkt. No. 57-2.) Mr. Whitted neither states the specific facts that he intends to elicit from further discovery, nor explains how such facts are essential to opposing the MBK Defendants' motion for summary judgment.[5] For the above reasons, Mr. Whitted's requests for a Rule 56(d) continuance (Dkt. Nos. 44, 57) are DENIED.

### D. Defendants' Motions for Summary Judgment

Mr. Whitted asserts 10 causes of actions in his complaint. (*See* Dkt. No. 1 at 13–27.) The Jordans and MBK Defendants have filed separate motions for summary judgment asking the Court to dismiss all of Mr. Whitted's claims with prejudice on various grounds. The Court discusses each cause of action in turn.

//

---

[5] The closest Mr. Whitted comes to stating the specific facts he expects to elicit from further discovery is where he writes that "[d]iscovery should be allowed so that it can be learned the true reasons why defendant Smyth [sic] signed pleadings informing the court that her client had a conflict of interest with Judge North when her client had never appeared before Judge North and had no such conflict." (Dkt. No. 44 at 12.) As explained *infra*, such information is irrelevant to proving Mr. Whitted's abuse of process claim and is therefore not essential to opposing the MBK Defendants' motion for summary judgment. *See infra* Part II.D.3.

1. <u>Intentional Interference with Parent-Child Relationship</u>

In Count I of the complaint, Mr. Whitted asserts that Mr. Jordan intentionally interfered with Mr. Whitted's custodial relationship with his three children. (Dkt. No. 1 at 13.) Washington recognizes a common law claim for intentional inference with a parent-child relationship. *See, e.g.*, *Strode v. Gleason*, 510 P.2d 250, 254 (Wash. Ct. App. 1973) ("We hold that a parent has a cause of action for compensatory damages against a third party who maliciously alienates the affections of a minor child.").[6] A plaintiff must prove the following elements: "(1) the existence of a family relationship, (2) a wrongful interference with the relationship by a third person, (3) an intention on the part of the third person that such wrongful interference results in a loss of affection or family association, (4) a causal connection between the third parties' conduct and the loss of affection, and (5) that such conduct resulted in damages." *Waller v. State*, 824 P.2d 1225, 1236 (Wash. Ct. App. 1992) (citing *Strode*, 510 P.2d at 250). A three-year statute of limitations applies to claims for intentional interference with a parent-child relationship. *Strode*, 510 P.2d at 254 (citing Wash. Rev. Code § 4.16.080). The statute of limitations begins to accrue "when the parent is aware that the hurt is suffered." *Id*.

Mr. Jordan argues that summary judgment is warranted because, among other things, Mr. Whitted's intentional interference claim is barred by the statute of limitations. (Dkt. No. 28 at 17.) The Court agrees. Mr. Whitted asserts that Mr. Jordan interfered with his custodial rights and relationship by:

> 1) removing the Plaintiff's children from the state of Georgia and detaining them in Chapel Hill, North Carolina, and Washington, all without the Plaintiff's permission or consent, preventing the Plaintiff from exercising his parental and custodial rights, and 2) conspiring to illegally change the name of Plaintiff's children without Plaintiff's consent and then concealing the purported change of

---

[6] Courts have variously referred to this tort as "malicious interference with family relations," "tortious interference with a parent-child relationship," and "alienation of affections of a minor child." *Grange Ins. Ass'n v. Roberts*, 320 P.3d 77, 92 (Wash. Ct. App. 2013). The Court refers to this cause of action as "intentional interference with a parent-child relationship," or for concision "intentional interference."

name from Plaintiff for years.

(Dkt. No. 1 at 13.) On September 20, 2011, Mr. Whitted filed suit in the U.S. District Court for the Northern District of Georgia, alleging, among other things, that Mr. Jordan had intentionally interfered with Mr. Whitted's parent-child custodial relationship by "removing [his] children from the state of Georgia and detaining them in Chapel Hill, in North Carolina, without [Mr. Whitted's] permission or consent, preventing [him] from exercising his parental and custodial rights." (Dkt. No. 30-1 at 20, 25.) Those allegations are identical to many of the allegations contained in the present complaint underlying Mr. Whitted's intentional interference claim. (*Compare id.*, *with* Dkt. No. 1 at 13.) Therefore, Mr. Whitted was aware of Mr. Jordan's actions that allegedly interfered with Mr. Whitted's custodial relationship with his children since, at the latest, September 2011. Since Mr. Whitted did not file this lawsuit until May 2, 2018, his claim falls well outside the tort's three-year statute of limitations. *See Strode*, 510 P.2d at 254.

The same conclusion results even if the Court considers Mr. Jordan's alleged actions taken after Mr. Whitted filed his federal lawsuit in 2011. (*See* Dkt. No. 1 at 13) (alleging that Mr. Jordan removed Mr. Whitted's children from North Carolina to Washington and conspired to change the names of Mr. Whitted's children without his consent). Regardless of Mr. Jordan's supposed continued interference, Mr. Whitted believed that he had suffered harm to his parent-child relationship as a result of Mr. Jordan's actions no later than 2011. Under Washington law, the three-year statute of limitations began to accrue at that time and would not reset every time Mr. Jordan allegedly took additional actions to interfere with Mr. Whitted's parental relationship with his children. *See Strode*, 510 P.2d at 254 (statute of limitations begins to run when "when the parent is aware that the hurt is suffered.").[7]

In addition to the statute of limitations bar, Mr. Whitted's intentional interference claim

---

[7] The Court also notes that Mr. Whitted's two oldest children changed their names after they were 18, meaning Mr. Whitted would no longer have had a viable claim for intentional interference with a parent-child relationship. *Strode*, 510 P.2d at 254 (tort is for alienation of affections of a *minor* child)

fails because he has not created a genuine dispute of material fact regarding whether Mr. Jordan's alleged conduct was the cause of Mr. Whitted's loss of affection with his children. In fact, the uncontradicted evidence in the record suggests that Mr. Whitted's own conduct led to the loss of affection with his children. In January 2011, the Superior Court of Fulton County granted Ms. Jordan sole physical and legal custody of her three children. (Dkt. No. 29-1 at 75.) The court noted that its decision was a result of Mr. Whitted's neglect and "in the best interest of the children." (*Id.* at 73–75.)

All three of Mr. Whitted's children have filed declarations explaining that he was barely involved with their lives either before or after their mother married Mr. Jordan. (*See* Dkt. Nos. 31, 32, 33); (*see, e.g.i,* Dkt. No. 32 at 1–2) ("I was in middle school when my parents divorced. The lack of relationship with [Mr. Whitted] did not start with the divorce, and it has not improved since that time."). Moreover, all three children state that Mr. Jordan did not take any of the actions that Mr. Whitted alleges form the basis for his intentional interference claim, such as keeping the children away from Mr. Whitted or forcing the children to change their surnames. (*See, e.g.*, Dkt. No. 32 at 2) ("The decision to change my name from Whitted to Jordan was completely my own decision."). Mr. Whitted has not presented any evidence to rebut the Jordans' evidence that Mr. Jordan did not interfere with Mr. Whitted's parent-child relationship.

Because Mr. Whitted's claim is time-barred and he has not come forward with any evidence to demonstrate that Mr. Jordan intentionally interfered with Mr. Whitted's parent-child relationships, the Jordans' motion for summary judgment is GRANTED as to this claim.

2. <u>Civil Conspiracy (as to the Jordans)</u>

Mr. Whitted alleges in Count II of the complaint that the Jordans conspired to "intentionally interfere with the parent and custodial relationship of [Mr. Whitted] with his three minor children, to falsely imprison Plaintiff's children, to cause loss of consortium, and to intentionally inflict emotional distress upon the Plaintiff, *inter alia*." (Dkt. No. 1 at 15.) Under Washington law, a claim for civil conspiracy is actionable "if two or more persons combine to

accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means." *Corbit v. J. I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967). The plaintiff has the burden of showing that "the alleged coconspirators entered into an [a]greement to accomplish the object of the conspiracy." *Id.* A civil conspiracy must be proved with clear, cogent, and convincing evidence. *Id.*

Mr. Whitted's intentional interference claim cannot support his civil conspiracy claim because the former is time-barred as explained in the prior section. *See supra* Part II.D.1. The Jordans assert that Mr. Whitted has failed to produce any evidence in support of the other allegations underlying his civil conspiracy claim. (Dkt. No. 28 at 16–17.) The Court agrees. Mr. Whitted has come forward with nothing more than conclusory allegations regarding his claims that the Jordans conspired to "falsely imprison [Mr. Whitted's] children, to cause loss of consortium, and to intentionally inflict emotional distress upon [Mr. Whitted]. (Dkt. No. 1 at 13.)[8] As the Court explained in the prior section, the evidence in the record contradicts Mr. Whitted's allegations regarding the Jordans' treatment of the three children, and Mr. Whitted has not presented any evidence to create a genuine issue of material fact regarding his civil conspiracy claim. *See supra* Part II.D.1. Certainly, Mr. Whitted has not presented clear, cogent, or convincing evidence to support conduct by the Jordans that amounted to a civil conspiracy.

For the above reasons, the Jordan's motion for summary judgment as to Mr. Whitted's claim for civil conspiracy as pled in Count II is GRANTED.

3.    Abuse of Process

Mr. Whitted alleges in Count III of the complaint that Ms. Jordan and the MBK Defendants committed the tort of abuse of civil process by filing and litigating the King County action against him. (Dkt. No. 13 at 10–15.) In order to succeed on a claim of abuse of process, a plaintiff must prove: (1) an ulterior purpose to accomplish an object not within the proper scope

---

[8] The Court explains *infra* why Mr. Whitted has failed to meet his burden for a claim of intentional infliction of emotional distress. *See infra* Part II.D.9.

of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1019 (Wash. Ct. App. 2017). The mere act of filing a lawsuit with a malicious motive is not sufficient to make out a claim for abuse of process. *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 221 (Wash. 1985). "[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Batten v. Abrams*, 626 P.2d 984, 990 (Wash. Ct. App. 1981).

Ms. Jordan and the MBK Defendants argue that Mr. Whitted has not come forward with evidence establishing that they undertook the King County action with an ulterior purpose, that they committed any improper acts during the prosecution of the lawsuit, or that Mr. Whitted was harmed as a result of their litigation conduct. (*See* Dkt. Nos. 28 at 18–19, 40 at 15–17.) The Court agrees. Mr. Whitted has not presented any evidence that Ms. Jordan, and by extension the MBK Defendants, filed the King County action with an ulterior purpose to accomplish an objective not within the scope of the litigation. In that lawsuit, Ms. Jordan sought to modify the existing child-support order, obtain a judgment against Mr. Whitted for $165,765.54 in unpaid child support payments, hold Mr. Whitted in contempt for failing to pay child support, and reduce the division of retirement assets required by the divorce decree to an offsetting judgment. (Dkt. No. 29-1 at 119–128.) These were all legitimate objectives expressly provided for by Washington law. *See* Wash. Rev. Code § 26.18.050 (allowing a civil contempt action to enforce a child support order).

The King County Superior Court granted Ms. Jordan most of the relief she sought.[9] The superior court entered judgment against Mr. Whitted in the amount of $164,868 for unpaid child support, awarded Ms. Jordan attorney fees in the amount of $18,000, and placed Mr. Whitted in custody after finding him in contempt. (Dkt. No. 29-1 at 130–36.) The Washington State Court

[9] The only relief the superior court did not grant was an offsetting judgment regarding the division of retirement assets. (*See* Dkt. No. 29-1 at 135.)

of Appeals affirmed the superior court's ruling. (*See* Dkt. No. 43-4.) To the extent Mr. Whitted asserts that Ms. Jordan or the MBK Defendants had an ulterior purpose for prosecuting the King County action, his beliefs are entirely speculative and contradicted by what actually occurred in that lawsuit. (*See* Dkt. No. 1 at 15–16) (alleging Defendants had the following ulterior motives: "causing Plaintiff great personal mental anguish, attempting to destroy his personal life, causing him to needlessly expend funds, extorting money from Plaintiff, invading his privacy and seclusion, and to libel and slander Plaintiff, among other things, out of ill will."). Mr. Whitted has not demonstrated that Ms. Jordan or the MBK Defendants used legal process "to accomplish an end not within the purview of the suit." *Batten*, 626 P.2d at 990. To the contrary, Ms. Jordan sought and received valid legal relief against Mr. Whitted and that outcome was upheld on appeal.

Nor has Mr. Whitted identified, much less supported with admissible evidence, any improper acts taken by Ms. Jordan or the MBK Defendants during their prosecution of the King County action. Although not entirely clear from the complaint, Mr. Whitted alleges that Ms. Jordan and the MBK Defendants: (1) improperly filed the King County action pursuant to the UCCJEA; and (2) falsely represented to the superior court that the lawsuit was filed pursuant to the UIFSA. (Dkt. No. 1 at 10–12.)[10] Essentially, Mr. Whitted asserts that Ms. Jordan and the MBK Defendants acted improperly by registering the divorce decree under the wrong statute (UCCJEA) and pursuing the King County action on that basis. (*Id.*)

Ms. Smythe filed a declaration stating that she mistakenly registered the divorce decree

---

[10] Mr. Whitted asserts that this conduct violated the Rules of Professional Conduct for attorneys. (Dkt. No. 1 at 11–12.) Mr. Whitted also suggests in his response to the MBK Defendants' motion for summary judgment that Ms. Jordan and the MBK Defendants acted improperly by filing a motion to remove the originally assigned superior court judge in the King County action. (Dkt. No. 57 at 6.) Mr. Whitted's assertion is baseless and directly in conflict with Washington law which expressly allows litigants to disqualify a judge as a matter of right without a showing of prejudice. *See* Wash. Rev. Code § 4.12.050; *Pub. Util. Dist. No. 1 v. Walbrook Ins. Co.*, 797 P.2d 504, 506-07 (1990). Such an allegation could not form the basis for an abuse of process claim.

under the UCCJEA rather than the UIFSA. (Dkt. No. 43.) Mr. Whitted has not come forward with any evidence to suggest Ms. Smythe intentionally registered the divorce decree under UCCJEA, or explained how registering the divorce decree under the wrong statute caused him to be harmed. Nor has Mr. Whitted provided admissible evidence that Ms. Smythe falsely represented to the superior court that the divorce decree was registered pursuant to the UFISA, rather than the UCCJEA.

Although the superior court commissioner originally dismissed Ms. Jordan's lawsuit because of the registration issue, that decision was overturned by the superior court. (*See* Dkt. No. 43-5.) The superior court found that Ms. Jordan's lawsuit substantially complied with the UIFSA's registration requirements. (*Id.* at 2–3.) The Washington State Court of Appeals affirmed the superior court's ruling, specifically holding that Ms. Jordan had complied with UIFSA's registration requirements, and that her failure to mention the UIFSA in her pleadings did not violate Mr. Whitted's due process rights. (Dkt. No. 43-4 at 5–8.) Therefore, even if Ms. Jordan and Ms. Smythe misrepresented that the King County action was filed pursuant to the UIFSA—an allegation that is unsupported by the record—such a misrepresentation was of no consequence because both the superior court and Court of Appeals ruled that Ms. Jordan's lawsuit substantially complied with the UIFSA. Given the state courts' decisions, Mr. Whitted cannot argue that Ms. Jordan and the MBK Defendants' conduct regarding the UCCJEA registration issue was "improper" or outside the proper scope of process. *See Sea-Pac Co.*, 699 at 220.[11]

---

[11] To the extent Mr. Whitted characterizes Ms. Jordan's lawsuit as "an illegal and frivolous civil action," the Court disregards such arguments under the *Rooker-Feldman* doctrine. (Dkt. Nos. 1 at 11, 57 at 11.) Pursuant to the *Rooker-Feldman* doctrine, district courts lack subject matter jurisdiction "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment on that decision." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139–40 (9th Cir. 2004) (citing *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). Mr. Whitted's abuse of process claim appears to rest, at least in part, on an assumption that the state court decisions were in error; however, under *Rooker-Feldman* the Court cannot review or disturb the validity of the state court decisions.

For the above reasons, Ms. Jordan and the MBK Defendants' motions for summary

judgment as to Mr. Whitted's claim for abuse of process are GRANTED.

### 4. Common Law Invasion of Privacy

Mr. Whitted alleges in Count IV of the complaint that Ms. Jordan and the MBK

Defendants committed the tort of invasion of privacy. (Dkt. No. 1 at 17.) Under Washington law:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Reid v. Pierce Cty.*, 961 P.2d 333, 338 (Wash. 1998) (quoting Restatement (Second) of Torts

§ 652D (1977)). In support of his claim, Mr. Whitted alleges that, "[o]n or about January 12,

2017, the Defendants did willfully and intentionally invade and violate Plaintiff's right to privacy

by taking photographs of Plaintiff's private life and then publishing those photographs via the

Internet and by other means." (Dkt. No. 1 at 17.)[12] Mr. Whitted does not provide any additional

information, either in his complaint or through admissible evidence, about who took the relevant

pictures, what the pictures depict, where the pictures were taken, or how the pictures were

published. (*See generally* Dkt. Nos. 1, 57, 62.)

The Court can glean from the Jordans' and MBK Defendants' filings that the relevant

photographs were taken by Ms. Smythe after Mr. Whitted was found in contempt and ordered

into custody by the King County Superior Court. (*See* Dkt. Nos. 29 at 9, 43 at 3.) In her

declaration, Ms. Smythe states that she took photographs of Mr. Whitted in handcuffs standing in

a public hallway outside of the courtroom. (Dkt. No. 43 at 3.) Ms. Smythe states that she "shared

those photographs with Ms. Jordan and [Ms. Kenny]," but no one else. (*Id.*) In her declaration,

Ms. Jordan states that she received two photographs of Mr. Whitted in handcuffs. (Dkt. No. 29 at

---

[12] The Court presumes that Mr. Whitted is asserting the privacy tort referred to as "public disclosure of private facts." *See Reid*, 961 P.2d 339.

9.) Ms. Jordan emailed one of the photographs to a mutual acquaintance of hers and Mr. Whitted, Walter Parish, with the accompanying message "off to jail." (*Id*.) Ms. Jordan did not show the photographs to anyone other than Mr. Jordan and Mr. Parish. (*Id*. at 9.) Ms. Jordan filed a copy of the email containing the picture of Mr. Whitted in handcuffs. (Dkt. No. 29-1 at 146.)

Ms. Jordan and the MBK Defendants argue that Mr. Whitted has not met his burden to demonstrate that the photographs revealed his private affairs. (Dkt. Nos. 28 at 22, 40 at 18.) The Court agrees. The Washington State Supreme Court has upheld the dismissal of an invasion of privacy claim where a plaintiff was videotaped from a location "that was open to the public." *Mark v. Seattle Times*, 635 P.2d 1081, 1095 (Wash. 1981). In doing so, the Washington Supreme Court emphasized that there is no invasion of privacy when a person photographs someone from a public location because doing so "amounts to nothing more than making a record, not differing essentially from a full written description, of a public sight which anyone would be free to see." *Id*. (citing W. Prosser, Torts 808-09 (4th ed. 1971)); *see also* Restatement (Second) of Torts § 652D (1977), Cmt. (b) ("there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record.").

It is undisputed that Ms. Smythe took the pictures of Mr. Whitted in a public hallway in the King County courthouse. (Dkt. No. 43 at 3.) It is also undisputed that Ms. Smythe took the pictures after the superior court ordered Mr. Whitted into custody following his public contempt hearing. (Dkt. No 29-1 at 143.) Thus, all of these events occurred in a public place, and Mr. Whitted has not presented any evidence to create a genuine issue of material fact that Defendants invaded his privacy by taking the photographs.

For the above reasons, Ms. Jordan and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for common law invasion of privacy are GRANTED.

5.     Common Law Intrusion into Seclusion

Mr. Whitted alleges in Count V of the complaint that Ms. Jordan and the MBK Defendants committed the tort of intrusion into seclusion. (Dkt. No. 1 at 18.) "One who

intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Mark*, 635 P.2d at 1094 (quoting Restatement (Second) of Torts, § 652B (1977) Cmt. (b)). As with other privacy torts, the intrusion must be into affairs that are truly private. *Id*.

Mr. Whitted alleges that Ms. Jordan and the MBK Defendants intruded into his "solitude, seclusion, and private affairs, by physical and other means." (Dkt. No. 1 at 19.) Although not clear from the complaint, this claim is presumably based on Ms. Smythe taking photographs of Mr. Whitted while he was in handcuffs. (*See id.*) Ms. Jordan and the MBK Defendants assert that Mr. Whitted has not provided any evidence that demonstrates they intruded into Mr. Whitted's private affairs by taking photographs of him in the King County courthouse. (Dkt. Nos. 28 at 23, 40 at 18.) The Court agrees. Ms. Smthye photographed Mr. Whitted in a public place where he enjoyed no right to privacy, and the photograph depicted something that was a matter of public record. *See Mark*, 635 P.2d at 1094. Mr. Whitted has not presented any evidence to create a genuine issue of material fact that Ms. Smythe intruded into his private affairs by taking the photographs.

For the above reasons, Ms. Jordan and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for intrusion into seclusion are GRANTED.

6.  Article I, Section 7 of Washington Constitution

Mr. Whitted alleges in Count VI of the complaint that Ms. Jordan and the MBK Defendants violated his privacy rights pursuant to article I, section 7 of the Washington State Constitution. (Dkt. No. 1 at 19.) Ms. Jordan and the MBK Defendants assert that Mr. Whitted's claim is not legally cognizable under controlling Washington State Supreme Court precedent. (Dkt. Nos. 28 at 23, 40 at 19.) The Court agrees. The Washington State Supreme Court has specifically declined to create a private right of action for violations of the right of privacy as protected by article I, section 7 of the Washington Constitution. *See Reid*, 136 Wn.2d at 213–14

("We feel, at this time, that Plaintiffs may obtain adequate relief under the common law and that such actions are better addressed under the common law invasion of privacy action."). Even if his claim were legally cognizable, Mr. Whitted has not created a genuine dispute of material fact that Defendants violated his right to privacy under article I, section 7 of the Washington Constitution. *See supra* Part II.D.5–6.

For the above reasons, Ms. Jordan and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for violation of article I, section 7 of the Washington State Constitution are GRANTED.

7.    Defamation

Mr. Whitted alleges in Count VII of the complaint that Ms. Jordan and MBK Defendants committed the tort of defamation. (Dkt. No. 1 at 21.) In order to succeed on a claim of defamation, a plaintiff must prove: (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Bender v. Seattle*, 664 P.2d 492, 503 (Wash. 1983). If the plaintiff is a private citizen, a negligence standard of fault applies. *Taskett v. KING Broadcasting Co.* 546 P.2d 81, 85 (Wash. 1976).

In support of his defamation claim, Mr. Whitted asserts that Ms. Jordan and the MBK Defendants "knowingly or recklessly published false statements, or statements that they knew or should have known were false or defamatory of and about Plaintiff, electronically and through other means." (Dkt. No. 1 at 21.) As with his privacy claims, Plaintiff does not specify what "statements" Ms. Jordan and the MBK Defendants published, or how they were published. (*See id.*) On that basis alone, Mr. Whitted has failed to meet his burden at the summary judgment stage. *See Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005) ("To survive a defense motion for summary judgment, a defamation plaintiff must allege facts that would raise a genuine issue of fact for the jury as to each element."). If Mr. Whitted is alleging that the photographs taken by Ms. Smythe represent defamatory "statements," his claims fail because the photographs were not false—they show Mr. Whitted being escorted to jail in handcuffs after he was ordered into

custody by the King County Superior Court. If Mr. Whitted is alleging that Ms. Jordan's email message to Mr. Parish, which read "off to jail," was defamatory, his claim also fails because the statement was not false—Mr. Whitted was being taken into custody after being found in contempt of court. Under either theory of defamation, Mr. Whitted has failed to meet his burden to create a genuine dispute of material fact regarding each element of his claim.

For the above reasons, Ms. Jordan and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for defamation are GRANTED.

> 8. <u>Civil Conspiracy (as to Ms. Jordan and the MBK Defendants)</u>

Mr. Whitted alleges in Count VIII of the complaint that Ms. Jordan conspired with the MBK Defendants to "abuse the civil process of the Superior Court of King County, Washington," and to "obtain photographs of Plaintiff by use of subterfuge and to publish those photographs over the Internet and through other means to other persons." (Dkt. No. 1 at 23.) Essentially, Mr. Whitted alleges that his claims of abuse of process and various privacy torts provide the predicate unlawful acts that support his civil conspiracy claim. Ms. Jordan and the MBK Defendants assert that Mr. Whitted cannot prove his civil conspiracy claim because his other claims are also deficient. (Dkt. Nos. 28 at 24, 40 at 21.)

As explained above, Mr. Whitted has failed to meet his burden on summary judgment with regard to both his abuse of process claim and privacy torts. *See supra* Parts II.D.3–7. Therefore, none of those causes of action can support his civil conspiracy claim. Mr. Whitted has neither alleged, nor produced evidence to support, any additional wrongful conduct that would support his civil conspiracy claim against Ms. Jordan and the MBK Defendants. (*See generally* Dkt. No. 1.) Certainly, he has not come forward with clear, cogent, and convincing evidence to support his conspiracy claim. *See Corbit*, 424 P.2d at 295.

For the above reasons, Ms. Jordan's and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for civil conspiracy as pled in Count VIII are GRANTED.

//

### 9. Intentional Infliction of Emotional Distress

Mr. Whitted alleges in Count IX of the complaint that Defendants committed the tort of intentional infliction of emotional distress. (Dkt. No. 1 at 24.) In order to succeed on a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) resulting severe emotional distress to the plaintiff. *Reid*, 961 P.2d at 337. "Liability [for intentional infliction of emotional distress] exists only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks, citation, and emphasis omitted). Whether conduct is sufficiently extreme or outrageous is typically a question of fact; however, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989).

Mr. Whitted alleges that "Defendants' actions as describe [sic] herein, including the violation of his state common law and constitutional right to privacy, was extreme and outrageous." (Dkt. No. 1 at 24.) The Jordans and the MBK Defendants argue that Mr. Whitted has not provided evidence to demonstrate that their conduct was extreme and outrageous. (Dkt. Nos. 28 at 24, 40 at 2.) The Court agrees. The Court has already held that Mr. Whitted failed to meet his burden with regard to his abuse of process and privacy claims. *See supra* Part II.D.3–7. The underlying conduct Mr. Whitted alleged in support of those claims—filing a lawsuit seeking unpaid child support, registering a divorce decree under the incorrect statute, or taking pictures of Mr. Whitted while he was in handcuffs—was not so outrageous in character "as to go beyond all possible bounds of decency." *Reid*, 961 P.2d at 337. The Court therefore holds, as a matter of law, that reasonable minds could not differ in finding that Defendants' conduct was not sufficiently extreme and outrageous to support Mr. Whitted's intentional infliction of emotional distress claim.

For the above reasons, the Jordans' and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for intentional infliction of emotional distress are GRANTED.

### 10. Negligent Infliction of Emotional Distress

Mr. Whitted alleges in Count X of the complaint that Defendants committed the tort of negligent infliction of emotional distress. (Dkt. No. 1 at 26.) To succeed on a claim of negligent infliction of emotional distress, a plaintiff must prove "duty, breach, proximate cause, damage, and objective symptomatology." *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 205 (Wash. 2014) (internal quotation marks omitted) (citing *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. Ct. App. 2008)). The tort's objective symptomology element requires that the claimed emotional distress be "susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 960 P.2d 424, 431 (1998).

Mr. Whitted alleges that "Defendants' actions as describe [sic] herein, including the violation of his state common law and constitutional right to privacy, was extreme and outrageous." (Dkt. No. 1 at 26.) The Jordans and the MBK Defendants assert that Mr. Whitted has neither alleged, nor produced evidence that his emotional distress is susceptible to medical diagnosis or established by medical evidence. (Dkt. Nos. 28 at 24, 40 at 22.) The Court agrees. Mr. Whitted has not come forward with any evidence to establish that his alleged emotional distress is susceptible to diagnosis or supported by medical evidence. *See Hegel*, 960 P.2d at 431. His claim also fails because he has not presented sufficient evidence to support the other elements of his claim, such as duty and breach.

For the above reasons, the Jordans' and the MBK Defendants' motions for summary judgment as to Mr. Whitted's claim for negligent infliction of emotional distress are GRANTED.

### E. Mr. Whitted's Motion for Leave to Amend

Mr. Whitted seeks leave to amend his complaint. (Dkt. No. 49.) Mr. Whitted seeks to assert a claim of negligent retention against Ms. Jordan and the MBK Defendants (Dkt. No. 49-1

at 28–29); a claim of negligent supervision against Ms. Kenny and the Law Offices of Molly B. Kenny (*id.* at 30–32); and a claim of vicarious liability against Ms. Jordan. (*Id.* at 32–34.) Mr. Whitted also seeks to add the following factual allegations in support of his claim for civil conspiracy against the Jordans: "Defendants Peter W. Jordan and Lori Jordan committed various wrongful and tortious acts from August 2015 through present to intentionally interfere with the parental and custodial relationship of the Plaintiff with his three minor children, to cause a loss of consortium, and to inflict emotional distress upon Plaintiff." (*Id.* at 15.) Defendants object to Mr. Whitted's motion, arguing that his proposed amendments are futile. (Dkt. Nos. 60, 61.)

Regarding pleading amendments, district courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Courts consider five factors in determining whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the pleading has previously been amended. *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Granting or denying leave to amend rests in the sound discretion of the district court and will be reversed only for abuse of discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).

Mr. Whitted's proposed amendments are futile because the new claims he seeks to allege fail as a matter of law. To succeed on a claim of negligent retention of an employee, a plaintiff must prove that he or she was injured by the negligent or wrongful acts of the employee. *McCarthy v. Clark Cty.*, 376 P.3d 1127, 1140 (Wash. Ct. App. 2016). Mr. Whitted alleges that Ms. Jordan and Ms. Kenny were negligent in retaining Ms. Smythe, who allegedly injured Mr. Whitted by making false representations while litigating the King County action. (Dkt. No. 49-1

at ¶¶ 76–82.) As the Court has previously explained, Ms. Smythe's conduct in the King County action was not improper and was within the scope of the prosecution of that lawsuit. *See supra* Part II.D.3. Since Mr. Whitted has provided neither factual allegations nor evidence to demonstrate Ms. Smythe acted negligently or wrongfully, his proposed claim for negligent supervision is futile.[13] *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) ("any amendment would have been futile in that it could be defeated on a motion for summary judgment").

Mr. Whitted's proposed claim for negligent supervision is similarly flawed. To succeed on a claim of negligent supervision, an employee must have acted outside the scope of his or her employment. *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 208 (Wash. 2018). Here, Mr. Whitted alleges that Ms. Kenny is liable for negligently supervising Ms. Smythe, based on Ms. Smythe's actions while litigating the King County action. (Dkt. No. 49-1 at ¶¶ 83–87.) Ms. Smythe's actions were plainly within the scope of her employment as Ms. Jordan's counsel of record during the King County action. (*See* Dkt. No. 43.) Mr. Whitted has not alleged any facts to suggest Ms. Smythe acted outside the scope of her employment as Ms. Jordan's counsel of record. Given the nature of Mr. Whitted's claim, there are no factual allegations that could support his claim of negligent supervision. Therefore, Mr. Whitted's proposed negligent supervision claim is futile.

Finally, the additional factual allegations that Mr. Whitted seeks to plead against the Jordans would not save his claims from being dismissed on summary judgment. Mr. Whitted's new allegation that the Jordans have committed "various wrongful and tortious acts from August 2015 through [the] present" appears to be an attempt to overcome the statute of limitations bar

---

[13] Having found that Ms. Smythe did not act negligently or wrongfully, Mr. Whitted's proposed claim for vicarious liability against Ms. Jordan fails as a matter of law. *See DeWater v. State*, 921 P.2d 1059, 1064 (Wash. 1996) (noting that vicarious liability arises "where the person whose actions cause injury is an employee or, if an independent contractor, where the principal retains the right to control the manner and means of work."). Therefore, Mr. Whitted's proposed vicarious liability claim is also futile.

previously identified by the Court. *See supra* Part II.D.1. However, as the Court already noted, the statute of limitations for the intentional interference with parent-child relationship tort began to run in 2011 when Mr. Whitted filed his lawsuit against Mr. Jordan in the Northern District of Georgia alleging that Mr. Jordan had caused harm to Mr. Whitted's parent-child relationship. *See supra* Part II.D.1. Merely asserting that the Jordans' conduct continued within the three-year statute of limitations does not cure this problem. Moreover, Mr. Whitted's new allegations that the Jordan's "committed various wrongful and tortious acts" are entirely conclusory. (*See* Dkt. No. 49-1 at ¶ 35.) Such conclusory allegations, unsupported by any admissible evidence, are not enough to save any of Mr. Whitted's claims on summary judgment.

Having found that Mr. Whitted's proposed amendments are futile, the Court DENIES Mr. Whitted's motion for leave to amend his complaint.

### F.     Joint Discovery Submissions

Mr. Whitted and the Jordans filed two joint submissions pursuant to W.D. Wash. Local Civil Rule 37. (Dkt. Nos. 47, 85) In the first submission, Mr. Whitted asks the Court to compel the Jordans to provide supplemental responses to some of Mr. Whitted's discovery requests. (*See* Dkt. No. 47) In the second submission, the Jordans ask the Court to stay their depositions pending a ruling on their motion for summary judgment. (Dkt. No. 85.) In light of the Court's order granting summary judgment in favor of the Jordans and the MBK Defendants, Mr. Whitted's motion seeking supplemental discovery responses (Dkt. No. 47) is DENIED as moot.

Further, as the Court discussed in denying Mr. Whitted's request for a Rule 56(d) continuance, Mr. Whitted has not demonstrated how the specific discovery he seeks in this motion would allow him to avoid summary judgment. *See supra* Part II.C. A review of Mr. Whitted's motion demonstrates that much of the requested discovery is simply irrelevant to his claims against Defendants. (*See, e.g.*, Dkt. No. 37 at 18) (Interrogatory No. 4: "When you removed Plaintiff's three minor children from the state of Georgia to North Carolina in August 2010, did you inform Defendant Peter W, Jordan of the court order requiring that you not remove

Plaintiff's minor children from the State of Georgia."). The Court additionally DENIES the Jordans' motion for a stay (Dkt. No. 85) as moot because their depositions have already occurred.

### G.    The Jordans' Motion for Sanctions

The Jordans ask the Court to impose sanctions on Mr. Whitted pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 38.) The Jordans assert that Mr. Whitted's claims "are unwarranted by existing law or by any good faith argument for a change or extension of the law, have no evidentiary support, and were filed for the improper purpose of harassment." (*Id*. at 1.) They ask the Court to award them their reasonable attorney fees and expenses incurred in defending against Mr. Whitted's claims. (*Id*.)

An attorney is subject to Rule 11 sanctions when he or she presents to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed. R. Civ. P. 11(b)(2).[14] When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). In this context, a filing is "frivolous" if it is "both baseless and made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 434 (9th Cir. 1996). The Ninth Circuit has held that "the mere existence of one non-frivolous claim" in a complaint does not immunize a party from Rule 11 sanctions. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990). A lawyer is also subject to Rule

---

[14] Although proceeding *pro se*, Mr. Whitted is a licensed attorney with over 25 years of litigation experience. (*See* Dkt. Nos. 29 at 10, 29-1 at 132.) This is a meaningful fact to the Court in determining whether sanctions are appropriate.

11   sanctions if a filing is presented for an improper purpose, "such as to harass, cause

2    unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

3        The Court concludes that Mr. Whitted's complaint is frivolous and that it was filed for

4    the improper purpose of harassing the Jordans. As the Court has previously explained, Mr.

5    Whitted's intentional interference claim against Mr. Jordan is barred by Washington's statute of

6    limitations. *See* Part II.D.1; *see Cervantes Orchards & Vineyards, LLC v. Deere & Co.*, 731 F.

7    App'x 570, 573 (9th Cir. 2017) (affirming district court's imposition of Rule 11 sanctions and

8    noting that claims were frivolous where they "were plainly barred by applicable statutes of

9    limitations."). Mr. Whitted alleges that Mr. Jordan interfered with his parent-child relationship

10   based on conduct dating back to 2010—allegations that are clearly barred by the applicable

11   three-year statute of limitations. *See Strode*, 510 P.2d at 254.

12       Moreover, these are largely the same allegations that Mr. Whited made against Mr.

13   Jordan in his 2011 federal lawsuit, in which Mr. Whitted claimed Mr. Jordan's actions caused

14   Mr. Whitted to suffer a loss of affection with his children. (Dkt. No. 30-1 at 18) ("Through his

15   actions as aforesaid, the Defendant Jordan has caused damage to the relationship of the Plaintiff

16   with his three minor children, including a loss of consortium."). This procedural history

17   precludes Mr. Whitted from arguing that his claim could now be timely or that he conducted an

18   adequate pre-filing review before filing the claim. *See Strode*, 510 P.2d at 254 (statute of

19   limitations begins to accrue "when the parent is aware that the hurt is suffered"); *see also*

20   *Spurrell v. Bloch*, 701 P.2d 529, 538 (Wash. Ct. App. 1985) (holding that "the action accrues

21   only when the loss of affection is sustained"). Mr. Whitted offers no contrary legal authority.

22   (*See* Dkt. No. 50 at 3–5.)

23       Mr. Whitted's abuse of process claim against Ms. Jordan is similarly frivolous. The claim

24   strikes the Court as a veiled attempt to challenge the rulings made by the King County Superior

25   Court and Washington Court of Appeals. The conduct that Mr. Whitted alleges forms the basis

26   of this claim—Ms. Smythe registering the divorce decree under the UCCJEA instead of

UIFSA—was explicitly determined to be harmless by both state courts. *See supra* Part II.D.3. Mr. Whitted repeatedly refers to the commissioner's initial ruling on the registration issue, but that ruling was overturned by the superior court and effectively rendered meaningless.[15] Even more fatally for his claim, Mr. Whitted has neither alleged, nor supported with evidence, a single act by Defendants in the King County action taken "to accomplish an end not within the purview of the suit." *Batten*, 626 P.2d at 990. He cannot do so because Ms. Jordan's lawsuit was a legitimate civil action in which she prevailed both at trial and on appeal.

All of Mr. Whitted's alleged privacy torts are also frivolous for several reasons. As an initial matter, Mr. Whitted's privacy related claims are based on a picture taken of him in a public hallway of the King County courthouse. *See supra* Part II.D.4–5. Controlling Washington precedent is clear that such facts do not support an invasion of privacy claim or an intrusion into seclusion claim. *See Mark*, 635 P.2d at 1095. In the face of this on-point Washington precedent, Mr. Whitted attempts to support his claims with unrelated federal case law. (*See* Dkt. No. 50 at 10–11.) Mr. Whitted neither alleged factual allegations, nor came forward with evidence that would support his theories for invasion of privacy or intrusion into seclusion. His inability to distinguish this caselaw is also indicative of his failure to conduct an adequate prefiling review of his claims.

But there are several other problems with Mr. Whitted's privacy and defamation claims. It is unclear to the Court how Ms. Jordan could be liable for physically intruding into Mr. Whitted's seclusion based on photographs taken by Ms. Smythe. As the Court previously mentioned, Washington does not recognize a civil cause of action for violation of article I, section 7 of the state constitution. *See supra* Part II.D.6. Yet, Mr. Whitted alleged such a claim against Ms. Jordan, without providing any argument or justification for departing from

---

[15] Mr. Whitted repeatedly refers to the King County action as a "baseless lawsuit." (*See, e.g.*, Dkt. No. 50 at 7.) His characterizations are further evidence, given the state court record, why *his* abuse of process claim is actually baseless.

Washington law. (*See* Dkt. No. 1.) Mr. Whitted did not support his defamation claim by alleging facts or providing evidence that Ms. Jordan published anything false about him. Mr. Whitted neither alleges nor explains how a picture of him in handcuffs with the caption "off to jail" could be defamatory in light of the undisputed fact that at the time of the picture, Mr. Whitted had just been ordered into custody and was being escorted to the King County Jail. *See supra* Part II.D.7.

In addition to being frivolous, Mr. Whitted's claims appear to be aimed at harassing the Jordans. The record before the Court evinces a troubling pattern of retaliatory litigation by Mr. Whitted against Ms. Jordan and others associated with her since the couple's divorce well over a decade ago. Unfortunately, this lawsuit appears to be the latest iteration of this troubling pattern. The pattern goes like this: Ms. Jordan files a meritorious lawsuit against Mr. Whitted related to the divorce decree, and Mr. Whitted responds by filing a separate unsuccessful lawsuit.

In 2008, Ms. Jordan sought and obtained a contempt order against Mr. Whitted for failing to pay child support. (*See* Dkt. No. 29-1 at 17.) Mr. Whitted later filed a lawsuit against Ms. Whitted, her lawyer, and "John Doe" for their alleged improper litigation conduct and interfering with Mr. Whitted's parent-child relationships. (*Id*. at 46–69.) Mr. Whitted's claims were eventually dismissed. (Dkt. No. 29 at 4.) In 2011, Ms. Jordan sought and obtained sole legal and physical custody of the children. (*See* Dkt. No. 29-1 at 70–76.) Mr. Whitted responded by filing a federal lawsuit against a superior court judge and Mr. Jordan, alleging improper litigation conduct and interfering with Mr. Whitted's parent-child relationships. (*See* Dkt. No. 30-1 at 2–30.) His claims were ultimately dismissed without prejudice. (*Id*. at 57.)

In 2016, Ms. Jordan obtained a substantial judgment against Mr. Whitted for six years of unpaid child support in the King County action. (*Id*. at 130–136.) After that judgment was affirmed by the Washington State Court of Appeals, Mr. Whitted filed the present lawsuit. He again alleges that Ms. Jordan, her lawyer, and Mr. Jordan have engaged in improper litigation conduct and interfered with his parent-child relationships. (*See generally* Dkt. No. 1.) As the Court has explained in detail, Mr. Whitted's claims in this lawsuit are frivolous. *See supra* Part

II.G. Given Mr. Whitted's past litigation conduct and the deficiencies in the present complaint, the Court concludes that Mr. Whitted filed this lawsuit for the improper purpose of harassing the Jordans. Mr. Whitted's intent to harass appears even more obvious when considering that all these lawsuits arose from, or can be traced back to, an acrimonious divorce.

Enough is enough. Mr. Whitted's failure to comply with Rule 11 warrants monetary sanctions, which are necessary to deter him from filing further baseless lawsuits against the Jordans. Therefore, the Jordans' motion for Rule 11 sanctions (Dkt. No. 38) is GRANTED. As part of the final judgment that will be entered in this case, Mr. Whitted will be ORDERED to pay the Jordans' reasonable attorney fees and expenses incurred in defending against this action.

## III.    CONCLUSION

In accordance with the above order, the Court makes the following rulings:

1.      Defendants Peter and Lori Jordan's motion for summary judgment (Dkt. No. 28) is GRANTED. Plaintiff's claims against the Jordans are DISMISSED with prejudice.

2.      Defendants Stacey Smythe, Molly B. Kenny, and the Law Offices of Molly B. Kenny's motion for summary judgment (Dkt. No. 40) is GRANTED. Plaintiff's claims against the MBK Defendants are DISMISSED with prejudice.

3.      Plaintiff's motions for a continuance pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. Nos. 44, 57) are DENIED.

4.      Plaintiff's motion for leave to file an amended complaint (Dkt. No. 49) is DENIED.

5.      The parties' joint submissions made pursuant to W.D. Wash. Local Civil Rule 37 (Dkt. Nos. 47, 85) are DENIED as moot.

6.      Defendants Peter and Lori Jordan's motion for Rule 11 sanctions (Dkt. No. 38) is GRANTED. No later than 30 days from the date of this order, the Jordans shall file a motion for attorney fees in accordance with this order and with the W.D. Wash. Local Civil Rule 7. The Court will not enter a final judgment in this case, until it has issued its order on the Jordans'

motion for attorney fees. *See* Fed. R. Civ. P. 58(e); *see also* Fed. R. Civ. P. 54(d)(2).

Pursuant to the Court's entry of a final judgment, the Clerk is DIRECTED to close this case.

DATED this 13th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE